UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX URIEL MORALES-FLORES,<br><br>Petitioner,<br><br>v.<br><br>TODD LYONS, et al.,[1]<br><br>Respondents. | No. 1:25-cv-01640-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Petitioner Alex Uriel Morales-Flores's ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondents Todd Lyons, Kristi Noem, Sergio Albarran, Tonya Andrews, and Pamela Bondi (collectively "Respondents") filed an opposition. (ECF No. 7.) Respondents waived hearing and had no objection to converting the request for TRO into a request for preliminary injunction. (*Id.* at 2.) For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction as set forth below.

---

[1] Respondents ask the Court, via footnote, to dismiss all respondents other than the facility administrator. (ECF No. 7 at 1 n.1.) The request, as made, is improper. If Respondents seek to dismiss other respondents from this action, they must do so in a properly noticed motion. *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) ("[A] request for court order must be made by motion. As a result, a request for affirmative relief is not proper when raised for the first time in an opposition.").

1

1  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2  Petitioner is a native and citizen of Honduras who fled the country in fear of persecution.

3  (ECF Nos. 2-2 at 9 and 7 at 2.)  Petitioner has been residing in the United States since June 11,

4  2019.  (ECF No. 2-2 at 8.)  In 2019, shortly after his arrival, United States Department of

5  Homeland Security ("DHS") initiated removal proceedings against Petitioner and he disclosed his

6  fear of persecution to immigration authorities.[2]  (*See* ECF No. 7-1 at 7.)  Around August 2019, an

7  asylum officer found that Petitioner had established a credible fear of persecution in Honduras.

8  (ECF No. 2-3 at 2.)  At some point between June 18, 2019, and August 12, 2019, DHS

9  presumably released Petitioner for the pendency of his removal proceedings because he was

10  served with a notice to appear at his next court date.[3]  (*See id.*)  Ultimately, on October 26, 2023,

11  an immigration judge dismissed Petitioner's removal proceedings without prejudice and ceased

12  pursuing Petitioner's removal.  (ECF Nos. 7 at 2 and 7-1 at 7.)

13  Over the last seven years, Petitioner has established a life in California, including stable

14  employment and a relationship.  (ECF No. 2-2 at 9.)  Petitioner has no criminal history.  (ECF

15  No. 7-1 at 6.)

16  On July 8, 2025, DHS issued a new policy dictating that anyone arrested within the United

17  States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) shall be considered

18  an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)") and subjected to

19  mandatory detention.[4]  (*See* ECF No. 7 at 8.)  The policy upends the Government's long-standing

---

[2]    The factual history provided for Petitioner's past immigration proceedings is sparse. The Court largely draws this information from the Form I-213 submitted by Respondents.  (ECF No. 7-1, Exh.1.)

[3]    Neither party directly addresses Petitioner's 2019 encounter with immigration authorities or his release.  However, the Court assumes DHS first detained and then released Petitioner based on Respondents' statement that Petitioner was initially subject to mandatory detention under 8 U.S.C. § 1225(b)(1) in 2019; Respondents do not claim that Petitioner escaped from immigration custody; Petitioner produced an August 12, 2019 Notice to Appear to immigration court; and Petitioner's argument that his liberty interest accrued based on his conditional release.  (ECF No. 2-3 at 2.)

[4]    Petitioner cites to the DHS policy as Exhibit 1 to his motion for TRO, however, Petitioner did not file that attachment with the Court.  Therefore, the Court does not independently consider the policy and accepts parties' description of the policy, which is not disputed.

practice that noncitizens living in the United States who may be removed are subject to 8 U.S.C. § 1226(a) ("§ 1226(a)"), which provides broad discretion for release or detention, rather than mandating detention. (ECF No. 7 at 7.) In September, the Board of Immigration Appeals, within the Department of Justice, issued a binding decision that immigration judges have no authority to consider bond requests for any person who entered the United States without admission because, under DHS's new policy, they are subject to mandatory detention under § 1225. *See Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025).

On September 28, 2025, United States Immigration and Customs Enforcement ("ICE") detained Petitioner without notice or a warrant. (*Id.* at 2.) DHS initiated new removal proceedings against Petitioner, which are ongoing.[5] Petitioner is charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection, and 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not possessing valid entry documents. (ECF No. 2-2 at 8.) On November 17, 2025, an immigration judge denied Petitioner a bond hearing, finding that he lacked jurisdiction to consider the matter under *Matter of Yajure Hurtado*. (*Id.*) Petitioner has now been detained without a bond hearing for over two months. (*Id.*)

## II.     STANDARD OF LAW

A preliminary injunction is an extraordinary remedy. Courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh a petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions

---

[5] At one point, Petitioner's brief states removal proceedings began on August 6, 2023 (ECF No. 2-2 at 19), but elsewhere in the record it is clear that proceedings began around the time of Petitioner's detention. (*See* ECF Nos. 2-3 at 4 and 7-1 at 2).

3

on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

### III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A.   Likelihood of Success on the Merits

Petitioner claims he is being unlawfully subjected to mandatory detention without a hearing in violation of the INA and his due process rights. The Court addresses each in turn.

##### i.   *Statutory Claim*

The Court begins with the central dispute in this case: whether § 1225(b)(2) or § 1226(a) governs Petitioner's immigration detention. The issue turns on whether Petitioner is an applicant "seeking admission." Section 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. Section 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain the individual. *Id.* And § 1226(a) provides several layers of review for an initial custody determination. *Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Until DHS changed its policy in July, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by an immigration authorities and subject to removal. *See id.* at 1196.

Here, Petitioner contends that he is not "seeking admission" and he should be subject to § 1226(a) consistent with DHS's former practice, thus, he is entitled to a § 1226 bond hearing. (ECF No. 2-2.) He further argues that subjecting him to mandatory detention under § 1225(b)(2)

1  without an individualized custody determination violates the INA.  (*Id.*)  Respondents argue that
2  § 1225(b)(2) is the correct authority for Petitioner's detention which does not entitle him to a
3  hearing.  (*See* ECF No. 7.)  Respondents do not argue that they have an independent basis (apart
4  from the change in policy) to subject Petitioner to mandatory detention under § 1225; it is DHS's
5  new statutory interpretation which subjects him to § 1225(b)(2).  Respondents contend that
6  DHS's new policy — adopting an expansive definition for "applicant for admission" — is the
7  proper interpretation of the INA.  (*Id.* at 8–15.)
8      Substantial ink has been spilled on this issue.  Courts nationwide, including this one, have
9  overwhelmingly rejected Respondents' arguments and found DHS's new policy unlawful. *See*
10  *e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec.
11  9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4
12  (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across
13  160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista*
14  *Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal.
15  Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*,
16  No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting
17  cases).
18      "These courts examined the text, structure, agency application, and legislative history of
19  1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that
20  does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo*
21  *Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12,
22  2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1)
23  disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between
24  sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous;
25  and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v.*
26  *Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23,
27  2025) (collecting cases).
28      Moreover, in *Maldonado Bautista v. Santacruz*, the court certified a nationwide "bond

1   eligible" class and issued declaratory relief for class members that the July DHS policy is an
2   improper interpretation of the INA and that class members are entitled to the statutory protections
3   of § 1226(a) including a bond hearing.  No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9
4   (C.D. Cal. Nov. 25, 2025) (extending summary judgment to class); *Maldonado Bautista v.*
5   *Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025)
6   (summary judgment).  Respondents acknowledge that Petitioner is likely a member of the bond
7   eligible class.  (ECF No. 7 at 2.)  Yet, Respondents have not indicated an intent to provide a bond
8   hearing.

9         This Court agrees with the chorus of well-reasoned and compelling decisions and finds no
10  reason to reconsider its prior rulings.  Particularly as the *Maldonado Bautista* court has already
11  declared a statutory violation on behalf of Petitioner as a class member.

12        In spite of the overwhelming caselaw contrary to their position, Respondents have
13  continued to detain Petitioner and recently denied Petitioner a bond hearing.  (ECF No. 2-2 at 9.)
14  Respondents may claim that the wave of nationwide rulings are "turtles all the way down."  (ECF
15  No. 7 at 11 n.6.)  But until a higher court turns the tide or provides a foundational ruling,
16  Respondents must contend with the current legal landscape: the overwhelming majority of courts
17  nationwide find that the Government is unlawfully subjecting individuals to mandatory detention
18  and denying them due process protections to which they are entitled by statute.

19        For these reasons, even on an imperfect factual record, the Court finds Petitioner is not an
20  applicant "seeking admission" subject to mandatory detention under § 1225(b)(2).  Petitioner is
21  subject to § 1226(a) and therefore he is entitled to the statutorily permitted process including a
22  bond hearing at minimum.  Thus, Petitioner is likely to succeed on the merits of his claim that
23  Respondents have violated the INA and improperly subjected him to mandatory detention without
24  a hearing.

25                        *ii.*     *Due Process Claim*

26        Petitioner also argues that his continued indeterminate civil detention without a hearing
27  infringes upon his liberty in violation of due process.  (ECF No. 2-2 at 20–24.)  Respondents
28  argue that Petitioner is only entitled to the process that Congress grants by statute and, under

§ 1225(b)(2) which mandates detention, the process to which Petitioner is entitled is: None. (*See* ECF No. 7 at 15–20.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

Petitioner argues that he has a substantial liberty interest based on his conditional release from immigration authorities in 2019, which is akin to the liberty of a parolee as established in *Morrissey v. Brewer*. (ECF No. 2-2 at 20–21 (citing 408 U.S. 471, 481–82 (1972)).) Respondents do not directly address liberty interest but essentially argue that Petitioner has no liberty interest because he is a noncitizen subject to removal and under § 1225(b)(2) he must be detained. (ECF No. 7.) The Court rejects this argument as set out above and need not repeat its findings here.

7

1 The Court agrees with Petitioner.

2 "Although in some circumstances the initial decision to detain or release an individual 3 may be within the government's discretion, the government's decision to release an individual 4 from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 5 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Id*. (quoting 6 *Morrissey*, 408 U.S. at 482) (modifications in original).  "Accordingly, a noncitizen release from 7 custody pending immigration proceedings has a protected liberty interest in remaining out of 8 custody." *Salcedo Aceros*, 2025 WL 2637503, at *6.  To determine whether an individual's 9 conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the 10 specific conditional release in the case before them with the liberty interest in parole as 11 characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 12 2617255, at *3 (E.D. Cal. Sept 9, 2025).

13 Here, the Court finds Petitioner has developed "enduring attachments of normal life" as 14 described in *Morrissey*, 409 U.S. at 482.  Over the last seven years, Petitioner has built a life, 15 relationships, and a community in California, and he has established gainful employment.  16 Moreover, Petitioner was released from immigration authorities in 2019, which created a 17 reasonable expectation that he would be entitled to retain his liberty absent a material change in 18 circumstances.  (*See* ECF No. 2-3 at 2 (Notice to Appear).)  Petitioner has not been arrested or 19 charged with any crimes in violation of such release.  Additionally, in 2023, an immigration judge 20 dismissed his removal proceedings, which increases his liberty interest.  (ECF No. 7-1 at 7.)  As 21 far as Petitioner understood, the Government was no longer seeking to remove him, until two 22 years later when the Government detained him without notice, giving rise to this action.

23 For these reasons, Petitioner has a liberty interest in his release from immigration 24 detention protected by the Due Process Clause.

25 *b) Procedural Due Process*

26 Having found a protected liberty interest, the Court examines what process is necessary to 27 ensure any deprivation of that protected liberty interest accords with the Constitution.  The Court 28 considers three factors: (1) "the private interest that will be affected by the official action;" (2)

1   "the risk of an erroneous deprivation of such interest through the procedures used, and the
2   probable value, if any, of additional or substitute procedural safeguards;" and (3) "the
3   Government's interest, including the function involved and the fiscal and administrative burdens
4   that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424
5   U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the
6   government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at
7   1206.

8   Petitioner argues that the *Mathews* factors favor Petitioner and, under Petitioner's
9   circumstances, due process requires notice and a hearing prior to detention. (ECF No. 2-2 at 22–
10  24.)  Respondents argue that the *Mathews* factors do not warrant a bond hearing, let alone notice
11  or a pre-deprivation hearing. (ECF No. 7 at 15–17.)[6]

12  As to the first *Mathews* factor – Petitioner's private interest – as discussed above,
13  Petitioner has been out of custody for over seven years. (ECF No. 2-2 at 8, 22.)  During those
14  years, Petitioner established a life, relationships, and maintained gainful employment. (*Id.*)
15  Petitioner's initial removal proceedings were dismissed and the Government was not actively
16  seeking his removal. (*Id.* at 3.)  The length of time Petitioner has been in the United States, the
17  dismissal of his removal proceedings, as well as his established relationships, create a powerful
18  interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094
19  (E.D. Cal. 2025).

20  As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the
21  risk here be considerable.  The risk of an erroneous deprivation of Petitioner's liberty interest is
22  high where he has received virtually no procedural safeguards such as a bond or custody
23  redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at
24  *5 (E.D. Cal. May 16, 2025).  This is particularly so where, as here, Petitioner was previously

---

[6] At the outset, Respondents argue that the Court should not apply the *Mathews* test here at all because due process in the immigration context is limited to the processes provided by statute. (ECF No. 7 at 16.)  However, the Ninth Circuit has repeatedly applied the *Mathews* test when assessing immigration due process challenges. *See Rodriguez Diaz*, 53 F.4th at 1206.  The Ninth Circuit instructs that the *Mathews* test is flexible and can account for the heightened governmental interest in the immigration detention context. *Id.*

9

released likely pursuant to a finding that he was neither dangerous nor a flight risk. *See R.D.T.M.*, 2025 WL 2686866 at *6 ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.") Given his 2019 release, the absence of subsequent criminal history, and the dismissal of Petitioner's prior removal proceedings, risk of erroneous deprivation of liberty is high.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is low. *R.D.T.M.*, 2025 WL 2686866 at *6. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the government's interest is further diminished because Petitioner likely appeared at his prior court hearings and he does not have a criminal record. *Id.* (citing *Doe*, 787 F. Supp. 3d at 1094; *Pinchi*, 2025 WL 1853763, at *2). Indeed, § 1226(a) provides for such protections.

Respondents counter they have a strong interest in executing removal of noncitizens — and this Court agrees — and cites caselaw for the proposition that a noncitizen's flight may impede removal. (ECF No. 7 at 17.) A hearing does not guarantee a noncitizen to release, it merely provides minimal procedural safeguards to ensure that detention is proper.

For these reasons, the Court finds Respondents' interest in placing Petitioner in detention without a hearing is low and does not outweigh Petitioner's substantial liberty interest or the risk of erroneous deprivation of liberty. Due process thus requires that Petitioner receive a hearing before a neutral decisionmaker that complies with § 1226(a) and related laws and regulations if he is re-detained.

Having found Petitioner has a protected liberty interest and determined that due process requires Petitioner receive a hearing before a neutral decisionmaker prior to re-detention, the Court finds that Petitioner has established a likelihood of success on the merits.

        B.    <u>Irreparable Harm</u>

The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017).

1    Moreover, "[i]t is well established that the deprivation of constitutional rights
2  'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres*
3  *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional
4  right is involved, most courts hold that no further showing of irreparable injury is necessary."
5  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*,
6  882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes
7  irreparable harm."). In addition to harms imposed by continued immigration detention, Petitioner
8  has shown he is likely to succeed on the merits of his constitutional claims. Thus, the Court finds
9  Petitioner has suffered irreparable harm.

          C.     Balance of Equities and Public Interest

11   As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the
12  balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.
13  Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092
14  (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally
15  cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753
16  F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir.
17  2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful
18  practice[.]"). Moreover, the public has a strong interest in ensuring its government follows the
19  law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are
20  staggering[.]" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017); *see also Index*
21  *Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the
22  public interest to prevent the violation of a party's constitutional rights.")
23   As discussed above, Petitioner is likely to succeed in proving that Respondents have
24  violated federal laws depriving him of his constitutional rights and liberty. Additionally,
25  Respondents are not harmed by their sworn duty to follow the law. *See Zepeda v. U.S. I.N.S.*, 753
26  F.2d 719, 727 (9th Cir. 1983). Thus, the balance of equities and public interest factors weigh in
27  Petitioner's favor.
28   Having found that Petitioner is likely to succeed on the merits of both his statutory and

constitutional claims, this Court finds that release is warranted to return to the status quo ante and remedy a constitutional violation. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

Therefore, the Court GRANTS Petitioner's motion and issues the preliminary injunction set forth below. IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order (ECF No. 2), converted to a motion for preliminary injunctive relief, is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Alex Uriel Morales-Flores from custody under the same conditions as he was released prior to his September 28, 2025 detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

5. This matter is referred to the United States Magistrate Judge for further proceedings.

//

//

IT IS SO ORDERED.

Date: December 10, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

13