# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEX URIEL MORALES-FLORES,

Petitioner,

v.

TONYA ANDREWS, et al.,

Respondents.

No. 1:25-cv-01640-TLN-EFB (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner Morales-Flores is a noncitizen formerly in the custody of Immigration and Customs Enforcement (ICE) seeking habeas corpus relief. ECF No. 1. On December 11, 2025, the District Court granted petitioner's motion for a temporary restraining order, converted to a motion for preliminary injunctive relief. ECF No. 12. Respondents were ordered to immediately release petitioner from custody and were enjoined and restrained from re-arresting or re-detaining petitioner absent compliance with certain constitutional protections. *Id.* The District Court referred the matter to the undersigned for further proceedings, *id.*, and the undersigned subsequently directed respondents to file a response to the petition and set a deadline for petitioner to file any reply. ECF No. 13.

Now before this court is the petition for habeas relief. ECF No. 1. In their answer to the petition, respondents stated solely that they "oppose the petition for writ of habeas corpus for the reasons set forth in their opposition to the motion for a temporary restraining order." ECF No. 14. In his traverse, petitioner stated that he also submitted resolution of the petition on his

1

previous pleadings.  ECF No. 15.  For the following reasons, and based on the record in this matter, it is recommended that the petition for writ of habeas corpus be GRANTED.

## I.      BACKGROUND

Petitioner is a native and citizen of Honduras who fled the country in fear of persecution. ECF Nos. 2-2 at 9 and 7 at 2.  Petitioner has been residing in the United States since June 11, 2019.  ECF No. 2-2 at 8.  In 2019, shortly after petitioner's arrival, the United States Department of Homeland Security (DHS) initiated removal proceedings against him, and he disclosed his fear of persecution to immigration authorities.[1]  *See* ECF No. 7-1 at 7.  Around August 2019, an asylum officer found that petitioner had established a credible fear of persecution in Honduras. ECF No. 2-3 at 2.  At some point between June 18, 2019, and August 12, 2019, DHS presumably released petitioner for the pendency of his removal proceedings because he was served with a notice to appear at his next court date.[2]  *See id*.  Ultimately, on October 26, 2023, an immigration judge dismissed petitioner's removal proceedings without prejudice and ceased pursuing petitioner's removal.  ECF Nos. 7 at 2 and 7-1 at 7.  Over the last seven years, petitioner has established a life in California, including stable employment and a relationship.  ECF No. 2-2 at 9.  Petitioner has no criminal history.  ECF No. 7-1 at 6.

On July 8, 2025, DHS issued a new policy dictating that anyone arrested within the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) shall be considered an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)") and subjected to mandatory detention.  *See* ECF No. 7 at 8.  The policy upends the Government's long-standing practice that noncitizens living in the United States who may be removed are subject to 8 U.S.C.

---

[1] This information is largely drawn from the Form I-213 submitted by respondents.  ECF No. 7, Ex. 1.

[2] While neither party directly addresses petitioner's 2019 encounter with immigration authorities or his release, the District Court assumed in its order granting petitioner's release (ECF No. 12) that DHS first detained and then released petitioner based on respondents' statement that petitioner was initially subject to mandatory detention under 8 U.S.C. § 1225(b)(1) in 2019.  Respondents did not challenge this assumption nor assert different facts in their answer to the petition.  ECF No. 14.  Respondents do not claim that Petitioner escaped from immigration custody; petitioner produced an August 12, 2019 Notice to Appear to immigration court, and petitioner maintains that his liberty interest accrued based on his conditional release. ECF No. 2-3 at 2.

§ 1226(a) ("§ 1226(a)"), which provides broad discretion for release or detention, rather than mandating detention. ECF No. 7 at 7. In September, the Board of Immigration Appeals, within the Department of Justice, issued a binding decision that immigration judges have no authority to consider bond requests for any person who entered the United States without admission because, under DHS's new policy, they are subject to mandatory detention under section 1225. *See Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025).

On September 28, 2025, ICE detained petitioner without notice or a warrant. *Id.* at 2. DHS initiated new removal proceedings against petitioner, which are ongoing. Petitioner is charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection, and 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not possessing valid entry documents. ECF No. 2-2 at 8. On November 17, 2025, an immigration judge denied petitioner a bond hearing, finding that he lacked jurisdiction to consider the matter under *Matter of Yajure Hurtado*. *Id.* At the time he filed his petition for writ of habeas corpus, petitioner had been detained without a bond hearing for over two months. *Id.* On December 11, 2025, the District Court granted petitioner's motion for a temporary restraining order, converted to a motion for preliminary injunctive relief. ECF No. 12. Respondents were ordered to immediately release petitioner from custody. *Id.*

## II.   LEGAL STANDARD

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

## III.   ANALYSIS

In his petition, petitioner raises two claims for relief. In his first claim, he alleges that his detention pursuant to 8 U.S.C. § 1225(b)(2) is unlawful under the INA and, in his second claim, he alleges that his detention violates his due process rights. ECF No. 1 ¶¶ 63-69. Petitioner

3

requests various relief, including a declaration that his detention is illegal, release from custody,[3] no re-detention without a bond hearing, and fees and costs under the Equal Access to Justice Act (EAJA).  ECF No. 1 at 15-16.

### A.      Claim One

In claim one, petitioner alleges that he is not subject to the provisions of 8 U.S.C. § 1225(b) and thus his detention pursuant to that section violates the Immigration and Nationality Act.  ECF No. 1.  Respondents counter that petitioner meets the definition codified in section 1225(a), of an "an applicant for admission", as he is a noncitizen "who 'is present' in the United States but 'has not been admitted' to the United States," thereby subjecting him to the mandatory detention provisions of § 1225(b)(2)(A).  ECF No. 7.

For the same reasons set forth in the District Court's previous order (ECF No. 12) granting a temporary restraining order and preliminary injunctive relief, this court finds that petitioner has demonstrated that his detention violates the INA such that a writ of habeas corpus should issue.  The central issue is whether section 1225(b)(2) or section 1226(a) governs petitioner's immigration detention.  Respondents do not dispute that petitioner entered the United States in June 2019 and was released on his own recognizance between June 18, 2019 and August 12, 2019.  Section 1226[4] "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted).  Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States'" and "'may release' a[] [noncitizen] detained under § 1226(a) 'on . . . bond' or 'conditional parole,'" except as provided under section 1226(c). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)); *see also Thuraissigiam*, 591 U.S. at 108. Respondents do not argue

---

[3] As discussed *supra*, petitioner has already been ordered to be released from detention. ECF No. 12.

[4] Section 236 of the INA is codified as 8 U.S.C. § 1226. *See* June 27, 1952, c. 477, Title II, c. 4, § 236, 66 Stat. 200; Pub.L. 104-208, Div. C, Title III, §§ 303(a), 371(b)(5), Sept. 30, 1996, 110 Stat. 3009-585, 3009-645.

that the exceptions of section 1226(c) are implicated here.  *See* ECF No. 7.

Once a noncitizen is conditionally released or paroled under section 1226(a), the statute and regulations guarantee him certain protections before he is re-detained or removed.  The Court of Appeals has summarized:

> Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.  If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his release.  *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Barreiros*, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964).  The IJ considers various factors in making this determination, including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country.  *Matter of Guerra*, 24 I. & N. Dec. at 40. The IJ also decides whether bond or other conditions on the alien's release are appropriate.  *Id.*; *see* 8 U.S.C. § 1226(a)(2). The detainee may be represented by counsel and can submit evidence in support of his claims.  *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016).  He can also appeal an adverse decision to the BIA. *See* 8 C.F.R. § 236.1(d)(3).
>
> On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). The same procedures apply to this new hearing, and its outcome is also appealable to the BIA. *See generally id.* § 1003.19.

*Rodriguez Diaz*, 53 F.4th at 1197.

Respondents assert that none of these provisions apply to petitioner, notwithstanding his release in 2019 pursuant to the authority of DHS.  Per respondents, the Government is required to detain petitioner pursuant to section 1225(b)(2)(A).  Section 1225(b) reflects a specific "supplement [to] § 1226's detention scheme." *Rodriguez Diaz*, 53 F.4th at 1197.  It "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) ("Inspection of applicants for admission").  Under this section, an "applicant for admission" is defined as "[a] . . . [noncitizen] present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287.  Under section 1225(b)(2)(A), ICE is required to detain certain individuals "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C.

§ 1225(b)(2)(A); *see Rodriguez Diaz*, 53 F.4th at 1197.

As the District Court has already held, respondent's position is unpersuasive.  And as numerous other courts have also held, section 1225(b) cannot apply to those noncitizens who are already present in the United States and who have previously been released.  *See generally Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025): *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5-7 (D. Mass. July 7, 2025).  The court adopts the cogent, detailed statutory analyses set forth in *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); and *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025).

In short, respondents' urged interpretation of section 1225(b) is untenable under principles of statutory construction because it "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens," *Rodriguez*, 779 F. Supp. 3d at 1258-59; *see also Gomes*, 2025 WL 1869299, at *7, and because it creates irreconcilable contradictions in the statutory scheme as a whole.  *See Salcedo Aceros*, 2025 WL 2637503, at *8.  Respondents' interpretation also conflicts with the legislative history of 8 U.S.C. § 1226, *Rodriguez*, 779 F. Supp. 3d at 1260, and the longstanding practices of the Department of Homeland Security, which "inform[s]" the courts' understanding of the law.  *Id.* at 1260-61 (*quoting Loper-Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025).

Moreover, in *Maldonado Bautista v. Santacruz*, the court certified a nationwide "bond eligible" class and issued declaratory relief for class members that the July DHS policy is an improper interpretation of the INA and that class members are entitled to the statutory protections

6

of section 1226(a) including a bond hearing.  No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (extending summary judgment to class); *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (summary judgment).  Respondents acknowledge that petitioner is likely a member of the bond-eligible class.  ECF No. 7 at 2.  Despite this, respondents have not indicated an intent to provide a bond hearing.

For all these reasons, this court finds that petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) violated the INA.  Petitioner is not an applicant "seeking admission" subject to mandatory detention.  Rather, he is subject to section 1226 and is, at a minimum, entitled to a bond hearing.  As such, petitioner is entitled to habeas corpus relief on this ground.

### B. Claim 2

Petitioner is also entitled to habeas corpus relief on his due process claim.  To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge. See* 424 U.S. 319, 335 (1976).  Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  The *Mathews* test applies in cases where a petitioner raises a due process challenge to his immigration detention.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

Respondents argue that petitioner's due process claim must fail, because he was lawfully detained under 8 U.S.C § 1225(b)(2)(A), and thus entitled to no other rights than those provided by statute.  ECF No. 7.  For the reasons set forth above, this position is unavailing; section

7

1225(b) does not authorize petitioner's detention.  Rather, under *Mathews*, petitioner has demonstrated that any detention without a bond hearing violates his due process rights.

### 1.  Protected Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  *See id*. (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.  Petitioner's release is similar.  Petitioner presented evidence that, since his release in 2019, he has created and maintained deep ties to his community, and he has maintained gainful employment.  ECF No. 2-2 at 9.  Petitioner's initial removal proceedings were dismissed, and the government was no longer seeking his removal.  ECF Nos. 7 at 2 and 7-1 at 7.  Finally, petitioner has no

criminal history.  ECF No. 7-1 at 6.

In all material respects, therefore, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*.  *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Accordingly, this court finds that, pursuant to *Morrissey* and its progeny, petitioner has a liberty interest in his release, implicating his rights under the Constitution's Due Process Clause. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970 (reaching the same conclusion for a paroled noncitizen); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

### 2.  Bond Hearing

Petitioner is also entitled to relief based on the second and third *Mathews* factors.  Without a bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention is considerable.  Detention under this statute is justified when a noncitizen poses a flight risk or a danger to the community.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  There is nothing in the record indicating that either circumstance is present here, as respondents do not proffer evidence that petitioner is either a flight risk or a community danger.  Without any procedural safeguards to determine whether petitioner's detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal

quotation and citation omitted).

Furthermore, respondents' interest in petitioner's detention is low. *See Ortega*, 415 F. Supp. 3d at 970. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

Thus, because petitioner has a liberty interest and is entitled to a bond hearing before a neutral arbiter at which the justification for his detention is proven by the Government, petitioner is entitled to relief on claim 2 of his petition.

## IV.   RECOMMENDATIONS

For the foregoing reasons, it is recommended that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.   The parties be ordered to file a joint status report within seven days of the date of this order confirming that, consistent with the District Court's earlier order, petitioner has been released from custody.

3.   Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner without a pre-deprivation bond hearing before a neutral adjudicator, who possesses authority to order release, at which the Government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his physical custody is required.

4.    Upon receipt of the joint status report confirming petitioner's release from custody, the Clerk be directed to enter judgment and close this case.

5.   Any fee petition be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 2, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11